DOYLE and another, Respondents, vs. TEASDALE and another, Appellants.

*February 4—March 3, 1953.*

For the appellants there was a brief by *Aberg, Bell, Blake & Conrad* of Madison, and oral argument by *Edwin Conrad*.

For the respondents there was a brief by *Stroud, Stebbins, Wingert & Stroud* of Madison, and oral argument by *B. H. Stebbins.*

CURRIE, J.   This appeal presents the following issues:

(1) Is the release voidable on the ground of having been executed as a result of mutual mistake;

(2) Is Doyle barred from seeking to set aside the release by reason of the fact that he failed to tender back the $1,400 received by him as consideration for the release; and

(3) If the release is not voidable on the ground of mutual mistake, is such release binding upon the Travelers Insurance Company (the workmen's compensation insurance carrier of the employer of plaintiff Doyle)?

It is the contention of plaintiffs that both plaintiff Doyle and the defendant Farmers Mutual in entering into the compromise settlement which resulted in the execution of the release dated March 12, 1948, relied upon Dr. Van Ells' written report of Doyle's injuries, dated February 26, 1948, as to the nature of such injuries; and, therefore, the release was executed under a mutual mistake of fact in that both parties were then ignorant of the injury to Doyle's coccyx. In passing on this contention, it is necessary to determine whether the injury to the coccyx was embraced within the diagnosis of *"sprained back"* contained in such written report of Dr. Van Ells.

Gould's Medical Dictionary (5th ed.), defines a "sprain" to be "a wrenching of a joint, producing a straining or laceration of the ligaments."   Maloy's Medical Dictionary for Lawyers (2d ed.), defines "sprain" as "an overstrain or wrenching of the ligaments of a joint."   3 Gray, Attorneys' Textbook of Medicine (3d ed.), lists coccygeal sprain under "sprain—back."   There is competent medical testimony in the

record that the injury to Doyle's coccyx produced a condition known as coccyalgia caused by the pulling of the ligaments connecting the coccyx with the sacrum. If there were only the pulling or tearing of the ligaments with no fracture of the bone itself, the general term "sprained back," contained in Dr. Van Ells' report, would be broad enough to embrace such condition and would tend to negative any mutual mistake in the execution of the release.

However, plaintiffs stress the testimony of Dr. Van Ells, that when he made his examination and report of February 26, 1948, he did not then have any knowledge of any injury to Doyle's coccyx. Dr. Van Ells' testimony on this point is as follows:

"*Q.* Now at the time you made this report which has been marked Exhibit 'A' and in which you refer to a sprained back, will you state whether or not at that time you had any knowledge of any injury to Mr. Doyle's coccyx? *A.* I did not.

"*Q.* In the report then, marked Exhibit 'A,' and in such other reports as you may have made with reference to the injuries of Mr. Doyle, did your explanation of sprained back in any way indicate that knowledge by you of any injury to Mr. Doyle's coccyx? *A.* No.

"*Q.* When did you first learn that Mr. Doyle had suffered any injury to his coccyx? *A.* Oh, it was approximately . . . one to three weeks before the time of operation; it was sometime between February 26th and the time of the operation."

Dr. Van Ells further testified that the point in Doyle's back where he was experiencing pain up to the time of such report was in the region of the lumbar-sacro junction which was about three and one-half inches above the coccyx.

On the other hand, Gamroth, the attorney-adjuster who represented the defendant Farmers Mutual in the settlement negotiation, testified:

"My basis on which I arrived at this settlement was here the doctor indicates a sprained back. As far as the bruises

and knee I wasn't so much concerned with that, but in my experience in handling these personal-injury cases it has been impressed on me through my own experience that a back injury is one of—is the type of an injury that has almost no limit of potentialities. A loose term like a back injury might include an injury to any part of the spine from one end to the other, and a back strain to me means an injury to any part of the back with strong indications that there might be further developments in that case."

Gamroth had not interviewed either Dr. Van Ells or the plaintiff Doyle and in making settlement relied solely upon the written report of Dr. Van Ells as to the nature of plaintiff's injuries and had no knowledge whether the back pain suffered by Doyle was in the lumbar-sacro region or three inches lower down where the coccyx is located. Dr. Van Ells' report listed *"sprained back"* and also stated, *"The shock and sprained back are not completely subsided as of examination this date,"* which was four months after the accident had occurred in which Doyle was injured. Even though it may be assumed that Dr. Van Ells did not contemplate that the expression *"sprained back"* appearing in the written medical report would embrace an injury to the ligaments of the coccyx, the other party to the release, Farmers Mutual, entered into the settlement with Doyle with the intention that the release would cover the potentialities of any future development which might properly be embraced within the definition of *"sprained back."* Therefore, while there may have been a mistake of fact on the part of Doyle in entering into the release, there was no mistake of fact on the part of the releasee, Farmers Mutual, if only a sprained coccyx as differentiated from a fractured coccyx was involved, and the general rule is that releases will be set aside on the ground of mistake only where the mistake is mutual and not unilateral. 76 C. J. S., Release, p. 646, sec. 25, in discussing the type of mistake that may be the basis for voiding a release, states:

"Ordinarily, it must appear that the mistake was the mutual mistake of both parties, a mere mistake of fact on the part of one of the parties to a release, in the absence of a showing of fraud, duress, undue influence, or mental incapacity, not being a sufficient ground for the avoidance of a release."

The exception of "a showing of fraud," stated in the foregoing quotation from Corpus Juris Secundum, includes constructive fraud consisting of innocent misrepresentations and will be commented upon further hereinafter in this opinion.

While the term *"sprained back"* is broad enough to cover an injury confined solely to the ligaments of the coccyx, it would not include a fracture of any of the bones comprising the spine. Therefore, in the instant case, where both parties entered into the settlement which was consummated by Doyle executing the release in reliance on the statement in the written medical report of Dr. Van Ells that diagnosed the back injury as a *"sprained back,"* there would be a mutual mistake of fact if it later developed that there was a bone fracture. The testimony is conflicting as to whether there was a fracture of the coccyx as well as injury to the ligaments, and the trial court made no specific finding on this point as the learned trial judge in his memorandum decision stated it as his opinion that any injury to the coccyx was not included within the designation of *"sprained back."* The formal findings of fact stated that Doyle at the time of settlement was suffering from an injury to his coccyx which was then unknown to either Doyle or Farmers Mutual; that both parties relied on Dr. Van Ells' reports (the nature of such reports, including the diagnosis of *"sprained back"* being stated) and had a right so to do; and that the reports of Dr. Van Ells "were erroneous but made in good faith."

The coccyx is found in the lower end of the spine and is often referred to as the "tailbone." It in reality consists of four small separate bones and the top and largest of such

bones is attached to the sacrum by ligaments and muscles. Three physicians and surgeons gave testimony bearing on the question of whether or not there was an actual fracture of the coccyx, Drs. Bear and Van Ells, who were called as witnesses for the plaintiffs, and Dr. Sullivan, who was the medical expert for the defendants.

Dr. Bear specializes in orthopedic surgery and has been practicing medicine for some twenty years. He examined Doyle at the Monroe Clinic on April 5, 1948, and also read X rays taken of Doyle on the same day at such clinic, and he stated definitely that he found no evidence of fracture. He stated that usually with trauma there is no fracture, and explained, "when the coccyx is divided into small segments as it normally is, it is very hard to fracture the coccyx because they are small, and each segment, if they are normal, is movable. What usually takes place is the tearing of the attachments between one segment and another, or the attachments between the coccyx and the sacrum producing a pain due to the tearing of the ligaments." He further stated that Doyle did not have any increased separation at the joint between the coccyx and sacrum. In his examination, which he made through the rectum, he personally felt the coccyx. Furthermore, Dr. Bear testified that, if one fractures his coccyx, there is usually immediate marked pain. This latter testimony is significant because Doyle did not experience his pain in the coccyx region until after the release was signed on March 12, 1948, four months after the accident.

On the other hand, Dr. Van Ells, who was not an orthopedic specialist, but who performed the operation removing the coccyx, testified that he "shelled the whole thing out" without counting the segments, and that he could feel a fracture and thought he could see a fracture line. When asked to locate such fracture line, he stated, "If I remember correctly, it was about one-fourth inch inferior to the sacrum."

Dr. Sullivan did not examine Doyle, but did examine the X rays of the coccyx and stated that there was no evidence in the X rays of a fracture of either the sacrum or the coccyx. He further stated that if there had been a linear fracture the evidence would be erased by the fourth month. He further testified that it takes an extremely heavy blow to break a bone, such as the coccyx, and corroborated Dr. Bear that if it had been a fracture there would have been immediate pain; in fact, he stated that there would not only be severe bone pain following the fracture, but there would be severe rectal pain, and every bowel movement for three weeks "is an agony."

Because of this conflict in the medical testimony as to whether or not there was actual fracture of a bone in the coccyx, and there having been no finding of fact made by the trial court on this point as to whether there was, or was not, such bone fracture, it is necessary that the cause be remanded in order for the trial court to make a specific finding on such issue. In determining this issue, it is within the discretion of the trial court to do so upon the testimony already in the record, or to take further testimony thereof.

If the trial court shall find that there was no bone fracture, then, for the reasons already stated, there was no mutual mistake which would warrant setting aside the release. On the other hand, if the finding should be that there was a fracture of a bone in the coccyx, then there was a mutual mistake of fact which would support the setting aside of the release because a fracture was without the contemplation of Farmers Mutual, as well as Doyle, as not being embraced within the term *"sprained back."*

The learned trial court based his decision, that there was a mutual mistake, upon the decisions of this court in *Schmidtke v. Great Atlantic & Pacific Tea Co.* (1940), 236 Wis. 283, 294 N. W. 828, and *Granger v. Chicago, M. & St. P. R. Co.* (1927), 194 Wis. 51, 215 N. W. 576, and stated that he

could not differentiate the facts in the instant case from such two decisions.

In the *Schmidtke Case, supra,* plaintiff was injured on June 30, 1939, as a result of falling into a trap-door opening in a sidewalk caused by negligence of the defendant's employees. Defendant's store manager sent him to a doctor selected by defendant and this physician sent a written report to plaintiff's attorney and to the store manager. Plaintiff's right arm was hurt in the accident, and on July 15, 1939, he asked the doctor whether he could go to work, telling the doctor that his right arm was "a little sore yet," and that he "couldn't very well work." The doctor replied, "That is going to be nothing when you exercise it a little bit for light work; you can do that;" and also told plaintiff that he could make a settlement of his claim. Plaintiff reported this to his attorney, and, on July 17, 1939, resumed work as a mason. Plaintiff's attorney, at the suggestion of defendant's claim agent, telephoned the doctor who reported to the attorney that plaintiff had made an uneventful recovery and was able to go back to work, and was ready for a settlement even though there was slight soreness in his arm, that such soreness would work itself out. A settlement was then made on July 17, 1939, for $220, $20 of which was for the doctor's bill, and plaintiff signed a release reading very similar to plaintiff's release in the instant case and covered *"all known or unknown, foreseen or unforeseen bodily or personal injuries . . . and the consequences thereof"* resulting from the accident. Thereafter, it developed that, unknown to the parties and unknown to the doctor, plaintiff had sustained a deep-seated injury to the blood vessels in his right arm with rather serious, disabling consequences to plaintiff. This court upheld the trial court in setting aside the release, and said with respect to the representations made by the attending physician (p. 291) :

"Likewise, the court was warranted in finding that Dr. Erling Ravn's statement as to plaintiff's condition and prospects of recovery was not a mere expression of opinion as to future events, but was a representation made in good faith as to existing facts upon which both the plaintiff and defendant had a right to rely. And as the representations were believed to be true and relied upon in good faith by the parties involved, all of whom were in 'unconscious ignorance' of the mistake, there was applicable the rule that a settlement and release effected under such circumstances can be set aside by the court on the ground of mistake of fact."

Plaintiffs contend that the decision in the *Schmidtke Case, supra,* parallels the instant case because Schmidtke had a known injury to his right arm when settlement was made and he signed the release, and the trouble that developed thereafter was "a deep-seated injury to the blood vessels" in the same arm, while, in the instant case, Doyle's known injury was a sprained back, and the unknown injury was an injury to his coccyx which is part of the spine, or back. However, there is an element present in the *Schmidtke Case, supra,* which is entirely absent in the case at bar. Such element is that of the representation of defendant's doctor in that case. Releases are subject to be set aside on the ground of misrepresentations as well as mutual mistake. The rule as to setting aside releases for misrepresentations of fact is stated in 45 Am. Jur., Release, p. 687, secs. 22, 23, as follows:

"The fact that a representation which induced the releasor to execute the release was not intentionally false does not affect the right of the releasor to have the release set aside if he was misled by the statement and executed the release believing the statement to be true. In such a case, innocent misrepresentations may as well be the basis of relief as where such statements are intentionally false. . . .

"The release of a claim for personal injuries may be avoided if it is executed in reliance on misrepresentations as to the nature or extent of the injuries, amounting to fraud

on the part of the releasee, its agent, or physician. Attending physicians or surgeons of a party responsible for an injury may, it seems, be regarded as authorized to advise the injured party as to the nature or extent of his injuries, so that the releasee will be bound thereby. . . . Ordinarily, the injured party has a right to rely on the representations of the attending physician of the releasee as to the nature and extent of the injuries."

76 C. J. S., Release, p. 649, sec. 26, also states the same rule and points out the distinction between representations made by a physician employed by the defendant and by one who is selected by the injured party:

"It is generally held that an innocent misrepresentation by the releasee or his agent of a material fact, intended to be acted on by the releasor, and relied on by him, is effective to avoid a release induced thereby. Thus, a misrepresentation to the releasor by the physician employed by the releasee as to the releasor's injuries or physical condition, made in good faith and with no intention to deceive, and relied on by the releasor, will be given such effect, . . . Innocent misrepresentations of the injured person's own physician, without any false representations by the releasee, have been held not sufficient to invalidate a release."

This court in the *Schmidtke Case, supra,* did not seem to differentiate between a cause of action to void a release for misrepresentations of fact as distinguished from a cause of action to set aside a release for mutual mistake of fact. That there is a distinction between the remedy of setting aside a release for mutual mistake of fact from that of misrepresentation of fact is brought out by the decision of the Minnesota court in *Bingham v. Chicago, M. & St. P. R. Co.* (1921), 148 Minn. 316, 181 N. W. 845. In that case plaintiffs sought to set aside a release on the ground of misrepresentation of fact and the trial court directed a verdict for defendant. On appeal plaintiff contended that the release was executed under a mutual mistake as to the character of his injury and should

be set aside for that reason. The appellate court held that inasmuch as no mistake of fact was pleaded the issue could not be raised for the first time on appeal. However, the court reversed and remanded for a new trial on the ground that there was testimony tending to show misrepresentations of fact made by the defendant's doctor who had attended plaintiff. The plaintiff's testimony as to such misrepresentations of the doctor was that the doctor said (p. 318) : ". . . there is nothing serious about it, nothing more than a football player would get . . . a bump . . . you . . . go to work and that would work out." The court cited *Smith v. Great Northern R. Co.* (1918), 139 Minn. 343, 166 N. W. 350, and *Althoff v. Torrison* (1918), 140 Minn. 8, 167 N. W. 119, as authority that statements made in good faith by attending physicians employed by the releasee, similar to those made to plaintiff Bingham, even though innocently made, were sufficient to present a jury issue as to whether there were misrepresentations of fact inducing the execution of the release.

From the foregoing authorities we deduce the rule that misrepresentations of material facts made by a physician employed by the releasee, even though innocently made, constitute constructive fraud sufficient to sustain a setting aside of a release where relied upon in good faith by the releasor in executing the release; and that such ground for voiding a release is distinct and separate from that of mutual mistake. In such a case there is a mistake of fact on the part of the injured party signing the release, but the fact that such a mistake may be unilateral and not mutual is not material because the basis for setting aside the release is the misrepresentation, and not the mistake of fact. Furthermore, a misrepresentation of fact made by an attending physician of the injured person's own choice cannot be the basis for setting aside a release on the ground of misrepresentation of fact in the nature of constructive fraud; but, it nevertheless may

be the basis for setting aside the release on the ground of mutual mistake where both parties in making a compromise settlement have relied upon it, as in the instant case.

The case of *Granger v. Chicago, M. & St. P. R. Co., supra,* relied upon by plaintiff and the trial court, is also distinguishable from the instant case on the same ground that we have differentiated the *Schmidtke Case, supra,* viz., misrepresentation of fact by an attending physician in the employ of the releasee. Furthermore, in the *Granger Case, supra,* we have the court especially stressing the factor of settling a very serious injury for a small sum that merely covered loss of wages. Prior to the settlement and signing of the release, the defendant railway company had advanced $300 to the injured man, and at the time of the settlement paid an additional $500, and this total of $800 covered only the plaintiff's actual wage loss. Thereafter, it was discovered that he was suffering from a very serious injury for which the jury awarded $12,000 in damages, and on appeal the railway company did not attack the amount of damages so found. Mr. Justice STEVENS, in the opinion in that case, stated (p. 54) :

"But it would be against good conscience and all rules of fair dealing to hold that plaintiff, who is in such a serious physical condition that the railway company does not question that $12,000 is a fair measure of the damage sustained by plaintiff because of his injury, is bound by a settlement made when both parties were acting under a mutual mistake of fact as to the extent of plaintiff's injury and the duration of his disability. It would be most inequitable and unjust to hold the release binding under such circumstances. To so hold would be to determine that the claim agent took such undue advantage of the plaintiff as to be guilty of a species of fraud."

In the recent case of *Jandrt v. Milwaukee Auto Ins. Co.* (1949), 255 Wis. 618, 626, 39 N. W. (2d) 698, it was stated: "An inadequate consideration is given considerable significance, if supported by other evidence, in establishing

fraud, mistake, etc." For other authorities on the significance of inadequacy of consideration see cases summarized in the annotation in 48 A. L. R. 1517 *et seq.,* under footnote 60. While a nominal or wholly inadequate consideration will not in itself justify setting aside a release, it is strong evidence tending to show either a mutual mistake of fact, or a mistake of fact on the part of the injured person, and fraud, or constructive fraud, on the part of the releasee.

The instant case, in which $1,400 was paid to plaintiff, is not one of nominal consideration. The release covered the damage to plaintiff's automobile as well as for personal injury. The automobile was not repaired but plaintiff traded it in after the accident on another car. The estimated repair bill was $460. On the basis of difference in value before and after the accident, Doyle's attorney claimed the car was worth $1,200 before the accident. After the accident the trade-in allowance for the same which Doyle received was $482.50, while Farmers Mutual's adjuster claimed the value before the accident was $900. Assuming the top figure of $700 as representing the damages to the car, Doyle's out-of-pocket expenses properly attributable to the accident were $13 for wrecker service, $56 for damaged suit of clothes, $110 loss of earnings for two weeks, and $25 medical bill, which left approximately $500 to cover pain and suffering and personal injuries over and above the out-of-pocket expenses properly chargeable to the accident up to the time of settlement. Furthermore, there was a question of liability involved, as Farmers Mutual's adjuster contended that there was some negligence on the part of plaintiff which was a proximate cause of the accident. This is an element to be considered in passing upon adequacy of consideration for release. 76 C. J. S., Release, p. 647, sec. 25a.

Defendants, in seeking to uphold the release, also rely upon the statement in the release that it covered "unknown" as well as known injuries. The rule of law applicable to this

contention is well stated in the recent case of *Aronovitch v. Levy* (1953), 000 Minn. 000, 000, 56 N. W. (2d) 570, as follows:

"Further that, even though a release expressly covers unknown injuries, it is not a bar to an action for such unknown injuries if it can be shown that such unknown injuries were not within the contemplation of the parties when the settlement was agreed upon, but that, if the parties did in fact intentionally agree upon a settlement for unknown injuries, such release will be binding. Whether the parties intended the release to cover unknown injuries is usually a question of fact."

While in the instant case the trial court made no specific finding of fact that the release was not intended to cover an unknown injury, the memorandum decision and the other findings of fact make it clear that the trial court did not consider that the parties intended the release to cover unknown injuries outside of those contained in Dr. Van Ells' reports. The facts that the amount paid Doyle for the release over and above damage to his car and other out-of-pocket expenses, which was only about $500, together with his testimony that he relied upon the reports of Dr. Van Ells, strongly support such conclusion.

Defendants further contend that there is no medical evidence establishing to a reasonable certainty that Doyle's coccyx condition was in any manner caused by the accident. The trial court made a specific finding that such coccyx condition was caused by the accident and points out the reasons for his finding in this respect in his memorandum decision. We have reviewed the evidence on this point and are satisfied that there is ample credible evidence to support such finding and it would serve no useful purpose to review the same at length in this opinion. The fact that Doyle experienced no pain in the region of the coccyx for the first few months subsequent to the accident is explained by Dr. Bear's testimony

that the injury to the ligaments of the coccyx were the result of trauma, which may produce pain by bursitis that develops subsequently over the coccygeal area, and that such pain "may occur most any time after the trauma, sometimes very soon after and sometimes a considerable period of time may elapse before the bursitis develops."

Defendants further contend that plaintiff Doyle is barred from prosecuting the within cause of action to set aside the release because of his failure to tender back the $1,400 received by him as consideration for the same. The general rule is that such tender is a condition precedent to maintain an action to set aside a release. 76 C. J. S., Release, p. 663, sec. 37; Anno. 134 A. L. R. 6; and *Charron v. Northwestern Fuel Co.* (1912), 149 Wis. 240, 134 N. W. 1048, 49 L. R. A. (N. S.) 162, 28 Ann. Cas. 939. There are, however, exceptions to the rule, which exceptions are discussed in the first two of these last-mentioned three authorities. However, defendants in their answer to the complaint herein did not plead such failure to tender back the $1,400 nor raise this issue in any manner in the court below, and, therefore, such issue will not be considered in this appeal. *Townsend v. La Crosse Trailer Corp.* (1950), 256 Wis. 609, 614, 42 N. W. (2d) 164; and *Monroe County Finance Co. v. Thomas* (1943), 243 Wis. 568, 572, 11 N. W. (2d) 190.

The last contention made by defendants is that if the release is held to be binding upon Doyle it is also binding upon the Travelers Insurance Company because of the latter's failure to notify Farmers Mutual or Teasdale before the settlement that it had a claim under sec. 102.29, Stats. 1947. In support of their position defendants rely upon the following statement of the Pennsylvania court in *Smith v. Yellow Cab Co.* (1927), 288 Pa. 85, 89, 135 Atl. 858:

"The employer, who pays an injured employee, knows of the employment and of the amounts paid to the employee. The wrongdoer is not affected with such knowledge. Hence,

the employer who claims to be subrogated must show that the wrongdoer had that knowledge, or was acquainted with such facts as would, if followed up, lead thereto, else he may lose his right by his laches . . . , if the wrongdoer in good faith settles with the party he has injured."

Farmers Mutual received a report of Doyle's injuries from Dr. Van Ells dated December 11, 1947, on a form of attending physician's report blank supplied by it, in which report appeared:

"Occupation [of Doyle] : Insurance investigator
"By whom employed: Retail Credit Company."

At the trial it was stipulated by all parties that Farmers Mutual had no knowledge that Doyle, when injured, was in the course of his employment with the Retail Credit Company engaged in the furtherance of his employer's business, until May 12, 1948, when it received a letter from the Travelers Insurance Company containing such information, which was two months after the release had been executed and the $1,400 paid over as consideration therefor.

However, Farmers Mutual on March 12, 1948 (the date of Doyle signing the release), "was acquainted with such facts as would, if followed up, lead" to the knowledge that Doyle when injured was in the course of his employer's business, to use the quoted language from *Smith v. Yellow Cab Co., supra.* It did then know that Doyle, when injured, was employed by the Retail Credit Company and the nature of his employment was that of insurance investigator. This indicated that he was engaged in an employment that naturally would require Doyle to do some traveling by automobile, and it was incumbent upon Farmers Mutual before making settlement to investigate whether at the time of accident Doyle was traveling in the course of his employment. By not making inquiry as to this, and by settling with Doyle alone, it did so at its peril in so far as said settlement might be a

bar to any right of action by the workmen's insurance carrier of Doyle's employer. It is therefore our conclusion that, even though in the further proceedings to be had in the trial court the release may be held to be binding as to Doyle, it is not binding upon Travelers Insurance Company, and the latter may recover from the defendants for its own use whatever sums it would be entitled to recover therefor in the absence of such release.

*By the Court.*—Judgment reversed and cause remanded for further proceedings in conformity with this opinion. The costs on this appeal shall abide the results of the trial below.

FAIRCHILD, J., took no part.