VILLAGE DEVELOPMENT CO., LTD., an Iowa corporation, Appellee and Cross-Appellant,

v.

Ray E. HUBBARD, Appellant and Cross-Appellee.

No. 55963.

Supreme Court of Iowa.

Jan. 16, 1974.

Edward N. Wehr, Davenport, for appellant, cross-appellee.

Doerr, Dower & Rehling by Michael L. Noyes, Davenport, for appellee, cross-appellant.

Submitted to MOORE, C. J., and MASON, RAWLINGS, REES and McCORMICK, JJ.

RAWLINGS Justice.

Appeal by defendant Ray E. Hubbard (Hubbard) and cross-appeal by plaintiff Village Development Co., Ltd., and Iowa Corporation (Village) from final adjudication on plaintiff lessor's action for eviction of defendant lessee. We affirm in part, reverse in part.

■ Since trial was in equity our review is de novo. See Henderson v. Hawkeye-Security Ins. Co., 252 Iowa 97, 100, 106 N.W.2d 86 (1960). Weight is accorded trial court's findings but they are not binding on us. See Iowa R.Civ.P. 344(f)(7). It is therefore essential we review at some length the evidence relevant to issues here properly presented. See In Re Marriage of Ried, 212 N.W.2d 391, 392–393 (Iowa 1973).

November 20, 1966, Hubbard was manager and director of plaintiff corporation. A lease agreement was then prepared and entered into by which defendant rented from plaintiff what is identified as Unit 11 of Village Shopping Center, located in Davenport.

By this agreement Hubbard was granted an initial occupancy term of five years commencing April 1, 1967, with four like optional extension periods, on notice given not later than six months prior to any term expiration date, all at a rental of $125 payable on or before the first day of each month.

January 20, 1970, Village gave Hubbard notice to quit because of failure to pay rent when due.

The same day, but prior to receipt of the above quit notice, Hubbard's existing rent arrearages were paid in full.

May 10, 1971, plaintiff filed a quiet title petition.

May 2, 1972, another quit notice was given Hubbard, this time by reason of asserted failure on his part to extend the lease.

July 29, 1971, Hubbard filed answer thereby affirmatively asserting his occupancy of Unit 11 was under a valid existing lease.

Hubbard's answering allegation was denied by Village in its July 10, 1972 reply.

The same date Village amended its petition thereby further asserting Hubbard had failed to give notice of his election to extend the lease.

At commencement of trial Hubbard additionally invoked the defenses commonly identified as waiver, estoppel, laches and ratification, to all of which Village interposed no challenge.

September 27, 1972, or one day after trial began, Village's petition was again amended, this time additionally seeking relief based upon forcible entry and detainer. But see The Code 1971, Section 648.19.

In course of trial Hubbard testified he, and other Village tenants, had historically made late rental payments, absent any protest, and a written first term lease extension notice had been timely sent to Village.

Testifying as a witness for Hubbard, his wife stated she typed the aforesaid extension notification, then placed it with a check for August rent in an envelope which was forwarded to Village July 30, 1971, registered mail, return receipt requested. That registry is before us as part of Exhibit K. It reveals the above noted envelope was received by Village August 24, 1971.

Hubbard further testimonially declared the aforesaid registered mail envelope with his extension notice and other papers including rent checks previously sent to Village, were later returned to him by mail. The extension notice was offered and admitted in evidence as Exhibit D-1.

Mary Allard, Village's secretary, testified on behalf of her employer. She acknowledged receipt of the Hubbard mailed envelope, opened by her August 24, 1971, but stated it contained no lease extension notice. On cross-examination she produced Exhibit E, a Village rental income record, later admitted in evidence. It revealed a history of late payments by Hubbard and other Village lessees.

Leonard H. Stewart, currently Village secretary and a board of directors member, said Hubbard prepared the instantly involved lease; several standard clauses, among them the right of eviction for nonpayment of rent, were not included in the instrument; and he, Stewart, had never seen any lease extension notice claimed to have been sent by Hubbards.

Other relevant facts will be later set forth as they relate to issues presented.

October 10, 1972, trial court found (1) Village acquiesced in Hubbard's late rent payment pattern; (2) Hubbard paid rental arrearages prior to service on him of the January 20, 1970, notice to quit; (3) the first five year extension option granted Hubbard was within the intent and understanding of the parties when the lease was executed, therefore enforceable; (4) timely and proper notice as to Hubbard's exercise of his first five year lease extension option was given Village; but (5) the lease provision granting to Hubbard three additional five year option extension rights was neither within the intent and understanding of the parties nor supported by adequate consideration, thus unenforceable. Resultantly title was quieted in Village subject to Hubbard's leasehold interest absent the last three extension privileges.

On appeal Hubbard disputes that portion of the decree voiding part of the lease.

By cross-appeal Village questions trial court's holding to the effect Hubbard effectively exercised his first five year extension option.

I. Both parties hereto have generally complied with our recently adopted revised rules of appellate procedure.

Noticeably, however, their briefs do not comply with Iowa R.Civ.P. 344(a)(2) and

344(b). They require that in the listing of all cases and statutes referred to in argument covering a point, *the most pertinent, not exceeding four in number, shall be printed in bold-faced type.*

Only by a strict observance of these and other related rules can the beneficial purpose for which they were designed be achieved.

■ II. Throughout the trial of this case, and on appeal, Village repeatedly alludes to the fact that Hubbard, while serving as a director on its board and manager of Village Shopping Center, prepared the lease in question. Pursuing that matter one more step, Village claims Hubbard took advantage of it by omitting any provision in the agreement for termination thereof on nonpayment of rent, and by inclusion of inequitable extension rights.

Though not specifically characterized as such, it still remains Village, in essence, asserts lease voiding fraud, mistake, bad faith or concealment by Hubbard. See generally 49 Am.Jur.2d, Landlord and Tenant, §§ 38–40; 51C C.J.S. Landlord & Tenant §§ 223–224.

Touching on that subject in Holden v. Construction Machinery Company, 202 N. W.2d 348, 357–358 (Iowa 1972), we quoted this, in part, from Des Moines Bank & Trust Co. v. Bechtel & Co., 243 Iowa 1007, 1081, 51 N.W.2d 174, 216 (1952):

> "Corporate directors and officers may under proper circumstances transact business with the corporation including the purchase or sale of property, but it must be done in the strictest good faith and with full disclosure of the facts to, and the consent of, all concerned. And the burden is upon them to establish their good faith, honesty and fairness. Such transactions are scanned by the courts with skepticism and the closest scrutiny, and may be nullified on slight grounds."

See also 19 Am.Jur.2d, Corporations, §§ 1296, 1304; 19 C.J.S. Corporations § 781.

Assuming, arguendo, the lease was drafted by Hubbard while serving as a Village official, the record amply discloses he acted in good faith, attended by full disclosure to and with approval of all then concerned.

At the threshold Exhibits I and J, being minutes of Village Board of Directors' meetings held May 4, 1966 and November 16, 1966, respectively, reveal that body extensively discussed and approved the leasing of Unit 11 to Hubbard at a rental of $1500 per year for five years per his offer to rent *"with options to renew".*

Exhibit I also discloses the executive committee was authorized to approve terms of such attendant lease "as it deemed fair".

Additionally, Leonard H. Stewart, as a witness for Village, stated on cross-examination that as the corporation's secretary he signed the Hubbard lease. The signature of William J. Wilson, president, also appears on that instrument.

Stewart also conceded Hubbard's efforts in uncovering a "scandal" saved the corporation from bankruptcy which had been recommended by its attorneys, and since the board members resultantly felt quite kindly toward Hubbard they wanted him to have a rather favorable lease by way of reward for what he had done.

The foregoing amply corroborates Hubbard's testimony regarding his actions in securing the recovery by Village of more than $100,000 previously misappropriated by others.

In light of the foregoing we now hold there is no merit in Village's attack upon Hubbard's conduct with regard to preparation and execution of the instantly involved lease.

III. The next question to be considered is whether trial court erred in holding the lease was not terminated by reason of Hubbard's tardy rent payments.

■ At the outset it is generally understood nonpayment of rent when due does

not ipso facto operate as a forfeiture of the lessee's term absent a prior payment demand by lessor. See Verlinden v. Revia, 238 Iowa 1030, 1032, 29 N.W.2d 199 (1947); Cole v. Johnson, 120 Iowa 667, 669–670, 94 N.W. 1113 (1903); 49 Am. Jur.2d, Landlord and Tenant, § 1034; Annot., 31 A.L.R.2d 321, 396–402.

As aforesaid, the record reveals Village made no demand on Hubbard for payment of rent due prior to service of any notice to quit. See Fritts v. Cloud Oak Flooring Company, 478 S.W.2d 8, 12–13 (Mo.App. 1972); Marine Equipment & Supply Co. v. Welsh, 188 Neb. 385, 196 N.W.2d 911, 913, (1972); 3A Corbin on Contracts, § 754; 51C C.J.S. Landlord & Tenant § 114(2)b.

■ In any event, as previously noted, Hubbard paid all past due rent before receipt by him of the aforesaid January 20, 1970, notice to quit. That alone dispels any right on the part of Village to terminate Hubbard's tenancy for failure to make timely payment of rent then owing. See 49 Am.Jur.2d, Landlord and Tenant, § 1030; 51C C.J.S. Landlord & Tenant § 110b.

■ Moreover, it is to us evident Village waived any breach of the lease regarding payment of rent when due by acquiescing in Hubbard's late remittance practice.

As stated in 49 AmJur.2d, Landlord and Tenant, § 1080:

"[A] general rule has been established that where a lessor acquiesces in the making of belated payments of rent, in departure from the express terms of his lease in that regard, for a length of time and under circumstances establishing a course of dealing upon which the lessee may, in the light of such experience, rely, the lessor cannot forfeit the lease for nonpayment of rent so represented, but must, if he desires to make use of the right to forfeit for that purpose, first warn the lessee of his intention as to future payments, and that the lessee is entitled to relief against a forfeiture otherwise attempted."

See also Marine Equipment & Supply Co. v. Welsh, *supra;* 51C C.J.S. Landlord & Tenant § 117(1)(2); cf. Lisbon Bank and Trust Company v. Murray, 206 N.W.2d 96, 98–99 (Iowa 1973).

■ IV. Village also contends trial court erroneously found Hubbard had effectively exercised his initial five year extension option. More specifically the problem to be resolved is whether the envelope mailed to Village July 30, 1971, with a check for August 1971 rent enclosed, also contained Hubbard's first extension option exercising notice.

As previously disclosed, Mrs. Hubbard testified she forwarded an envelope to Village July 30, 1971, registered mail, return receipt requested, and the receipt for same discloses delivery thereof August 24, 1971.

Village admits the envelope, with a rent check therein, was received but maintains no lease extension notice was enclosed.

Looking to the other side of the coin Hubbards testified the above mentioned envelope with some rent checks and the lease extension notice were returned to them by mail early in September 1971.

Trial court observed the witnesses, weighed the foregoing testimony, and thereupon concluded an effective lease extension notice was given Village for the five year period commencing April 1, 1972. See Iowa R.Civ.P. 344(f)(7).

We find no persuasive cause to disagree with that conclusion and hold accordingly.

V. The final issue presented focuses upon trial court's holding that "three additional five year [extension] options at the same rent and on the same terms and conditions were not within the reasonable intent and understanding of the contracting parties, and the same are not supported by adequate consideration."

To the extent here involved, paragraph 6 of the lease provides in part:

"Lessee shall have the option by notice to Lessor not later than six (6) months prior to expiration of this Lease to extend this Lease for an additional term of five (5) years at the same stipulated rental. Lessee shall have further right of three (3) additional five (5) year options, * * *."

Appellate briefs submitted by both parties hereto accord extensive treatment to the above mentioned lease extension issue.

Hubbard argues trial court reformed the instrument by deleting therefrom the last three of four extension option rights specifically granted but had no authority or jurisdiction to do so absent any prayer for such relief. See Johnson v. Johnson, 188 N.W.2d 288, 291–292 (Iowa 1971). See generally Nasco Land Development Company, Inc. v. Osborne, 210 N.W.2d 638, 641–642 (Iowa 1973); Hagenson v. United Telephone Company, 164 N.W.2d 853, 855 (Iowa 1969); LaMotte Ind. Sch. Dist. v. Jackson County Bd. of Ed., 261 Iowa 961, 155 N.W.2d 423, 425 (1968); McClintock on Equity, §§ 95–105 (2d ed. 1948).

In this regard Village inceptionally concedes the redress instantly granted by trial court "was not contained in any written pleadings filed by the parties."

On the other hand, as best we can determine from Village's brief, it maintains reformation became an issue in the case by introduction of evidence relating thereto absent any objection. Authorities supportively cited are, Reserve Insurance Co. v. Johnson, 260 Iowa 740, 746, 150 N.W.2d 632 (1967); Reed v. Harvey, 253 Iowa 10, 13, 110 N.W.2d 442 (1961); Wilson v. Corbin, 241 Iowa 593, 604–606, 41 N.W.2d 702 (1950).

It appears to us the matter of reformation was actually injected by trial court, sua sponte, in adjudicating other issues squarely presented.

Proceeding on the debatable assumption reformation was an issue we are satisfied trial court erred in holding thereon as it did.

■ First to be considered is trial court's finding that the lease provision for three additional five year terms at Hubbard's option was not within the reasonable intent and understanding of the contracting parties.

Here again we turn to Exhibit J, "Minutes of Joint Meeting of the Boards of Directors of Town Centre, Ltd. and Village Development Co., Ltd." held November 16, 1966. According to those minutes, prepared by Leonard H. Stewart, "Mr. Hubbard offered $2.00 per square foot, or $1,500.00 per year rent for five years with *options* to renew. Mr. Hubbard pointed out that the other leases that had been recently signed were for $2.00 per square foot." (Emphasis supplied).

Also, as aforesaid, paragraph 6 of the leasing instrument, quoted above, precisely and understandably denotes those multiple extension rights accorded lessee Hubbard by lessor Village.

The foregoing adequately discloses both parties to the lease agreement intended and understood Hubbard was granted all extension options explicitly declared. Trial court erred in holding to the contrary.

Referring now to the matter of consideration for the aforesaid extension options, we need look only to this statement in 1A Corbin on Contracts, § 270:

"[T]he giver of the option can make his promise conditional on anything that he pleases and can limit the power of the option holder likewise. In ordinary options to buy or to sell, the condition most commonly prescribed is the giving of notice of acceptance within a stated time. There are many cases holding that the giving of this notice is the making of a promise by the option holder that he will pay the price, deliver the goods, or ren-

der any other prescribed performance. The giving of notice makes the contract bilateral; so that the option giver can now enforce it against the option holder, by all appropriate contract remedies at common law and equity. The notice of acceptance binds the acceptor irrevocably.

"There is, indeed, no new consideration for this promise by the option holder; the only consideration for it must be found in the antecedent promise of the option giver. That promise was already binding; but it was only conditionally binding, and the condition was the making of the return promise. In this respect, the transaction is like the making of any other bilateral contract; the acceptor's promise is always made subsequently to the offeror's promise, and yet the antecedent promise is a sufficient consideration. It is offered on the express condition that the acceptor's promise shall be given in return. The fact that in an option contract the offered promise is not revocable makes no difference; it is not enforceable except on condition of acceptance, and at the time of the acceptance there is a new and important change in the character of the legal duty of the option giver. This satisfies the requirement of consideration for the new promise of the option holder."

See also 50 Am.Jur.2d, Landlord and Tenant, § 1157; 51C C.J.S. Landlord & Tenant § 56(4).

■ We therefore conclude each and every extension right granted defendant Ray E. Hubbard by plaintiff Village Development Co., Ltd., an Iowa Corporation, under paragraph 6 of the instantly involved lease agreement is supported by adequate consideration. Trial court erred in holding otherwise.

On remand of this case the decree from which appeal is taken shall be modified and corrected in accord herewith.

Costs are taxed to plaintiff Village Development Co., Ltd., an Iowa Corporation.

Affirmed in part, reversed in part and remanded with directions.