FLORA BARNARD, appellee, v. CEDAR RAPIDS CITY CAB COMPANY
et al., appellants.

No. 51555.

(Reported in 133 N.W.2d 884)

736

738

·MARCH 9, 1965.

REHEARING DENIED MAY 4, 1965.

Tom Riley of Simmons, Perrine, Albright, Ellwood & Neff, of Cedar Rapids, for appellants Cedar Rapids City Cab Company and Jack L. Cupp.

Wayne C. Collins of Shuttleworth & Ingersoll, of Cedar Rapids, for appellants John F. Schloeman and Myrna Schloeman.

David M. Elderkin of Barnes, Wadsworth, Elderkin, Locher & Pirnie, and Fred Fisher of Fisher & Yarowsky, all of Cedar Rapids, for appellee.

THORNTON, J.—Plaintiff's action is for injuries received in an intersection collision between the cab of defendant City Cab Company, driven by defendant Cupp, in which she was a passenger, and the car driven by defendant John Schloeman and owned by him and his wife, defendant Myrna Schloeman. The collision occurred at the intersection of Third Street and Eighth Avenue in Cedar Rapids on December 20, 1961. Traffic at the intersection was controlled by automatic signal lights. The cab approached the intersection from the south, the Schloeman car from the west. The light was red for Schloeman, green for the cab. From the testimony the jury could find both drivers were negligent. Defendants pleaded a release given by plaintiff to the Schloemans for $100 in bar, plaintiff, by way of reply, pleaded the release was executed as the result of a mutual mistake of fact as to the nature and extent of her injuries. This issue, together with the issues of negligence and damages, was submitted to the jury. A verdict was returned for plaintiff for $17,500. From the judgment entered thereon both defendants appeal. Both defendants urge the question of mutual mistake as to the release should not have been submitted to the jury. Each of them separately urges errors in the reception and rejection of evidence and in the instructions.

I. The release issue is common to both defendants, as is a related question of evidence. They will be considered first. Also the propriety of the instructions on this issue and the refusal of the trial court to submit interrogatories requested by defendants Schloemans bearing on the release issue.

At the time of the collision plaintiff was thrown from her seat in the cab, her head struck a handle on the side of the cab, she became nauseated at the scene and was taken by another cab to the hospital. There plaintiff was X-rayed. She was examined by her doctor, Dr. John P. Barthel, at his office. He gave her a sedative and headache pills and sent her home. When she got home, Mr. Edward J. Lyons, an adjuster representing Schloeman's insurance carrier, called on her. She gave him a statement of the accident and her condition. Plaintiff next saw the adjuster on January 16, 1962, when she and her husband signed a release running to Mr. Schloeman for $100. The release provides:

"For The Sole Consideration of One Hundred and no/100 Dollars, the receipt and sufficiency whereof is hereby acknowledged the undersigned hereby releases and forever discharges John Schloeman * * * who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 20th day of December, 1961, at or near Cedar Rapids, Iowa.

"Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

■ Our cases have long held a contract may be set aside for a mutual mistake of a material fact and a release is no different from any other contract. In the following cases we have held or recognized a release for personal injuries may be set aside where the release was given and taken under a mutual mistake as to the nature and extent of the releasor's injuries. Reed v. Harvey, 253 Iowa 10, 110 N.W.2d 442; Wieland v. Cedar Rapids and Iowa City Railway Co., 242 Iowa 583, 46 N.W.2d 916; Jordan v. Brady Transfer & Storage Co., 226 Iowa 137, 284 N.W. 73; Pahl v. Tri-City Railway Co., 190 Iowa 1364, 181 N.W. 670; Malloy v. Chicago Great Western Railroad Co., 185 Iowa 346, 170 N.W. 481; Seymour v. Chicago & Northwestern Railway Co., 181 Iowa 218, 164 N.W. 352; Reddington v. Blue & Raftery, 168 Iowa 34, 149 N.W. 933; and citations in each. See also annotation, 71 A. L. R.2d 82; Sloan v. Standard Oil Co., 177 Ohio St. 149, 203 N.E.2d 237; Cole v. Lumbermens Mutual Casualty Co., La. App., 160 So.2d 785; Smith v. Broscheid, 46 Ill. App.2d 117, 196 N.E.2d 380; Collier v. Walls, 51 Tenn.

App. 467, 369 S.W.2d 747; Evans v. S. J. Groves & Sons Co., 315 F.2d 335 (2 Cir. 1963); Warren v. Crockett, 211 Tenn. 173, 364 S.W.2d 352; and Hall v. Strom Construction Co., 368 Mich. 253, 118 N.W.2d 281.

Our question here is, is there sufficient substantial evidence to warrant submitting the question of mutual mistake to the jury?

Plaintiff's position is there was a mutual mistake as to the nature and extent of her injuries in that she and the adjuster at the time she gave the release thought that she had only received a bump on the head causing a headache which would shortly disappear, when in fact she had received a permanent injury, a "whiplash" injury to the occipital nerves on both sides of her head. She returned to her doctor about four weeks after the release was signed. The neurosurgeon testified his final diagnosis was "greater occipital neuralgia." On March 17, 1962, to correct this condition a three-hour operation was performed on plaintiff, between the nape and midportion of her neck, for which surgical and hospital expenses of $1371.81 were incurred.

Plaintiff's evidence is, she was X-rayed at the hospital, checked by her doctor, returned home, she was questioned by the adjuster on the day of the accident. She later called her doctor and was assured the X ray was negative. When the adjuster called on her January 16, 1962, she was still suffering from headaches but thought they were due to the bump or her head. The bump was still tender. She thought the headaches would go away. She did not know she had received an injury to the occipital nerves and was permanently injured. She stated she would not have signed a release for $100 if she had known of her true condition. The adjuster, called by the plaintiff, testified he investigated the accident, took statements from most, if not all, of those involved including Mr. Schloeman and plaintiff, and he obtained a medical report from plaintiff's doctor on a form furnished by his company. This report showed, under description of the nature and extent of injury, "Contusion of left side of head and low back." Under surgical procedure or treatment, "Examined—X rays ordered—dismissed." To the question, "Is further treatment necessary?" the answer was, "not expected."

To the question, "Do you anticipate a complete recovery?" the answer is, "yes." X-ray findings were, "Negative for fracture." The adjuster acted on this report by contacting plaintiff the evening of the day he received it. The adjuster's testimony is clear he was not aware plaintiff had sustained an injury to the occipital nerves, that her injury was permanent or she would require surgery and future hospitalization. From the statement he took from plaintiff he knew she did not consider her injury to be permanent. From the statements in the adjuster's file it was clear the defendant Schloeman had run the red light and plaintiff was a rear seat passenger in the cab. He testified on cross-examination Mr. Schloeman told him that he, Schloeman, did not really slide through the light but made a quick decision to go through after the light changed hoping to get out of the way. Also that he took into consideration the nature and extent of plaintiff's injuries in making the settlement. Both plaintiff and the adjuster testified they discussed plaintiff's hospital and doctor bills, her lost time, her apparent injuries, and her torn overshoes and hose. The amounts of these items total $71.30. Neither of them states the difference between $71.30 and the $100 paid for the release was for pain and suffering to the date of the release. Plaintiff did state the $100 was to cover all expenses whatever she had. The adjuster on direct examination in answer to a question as to what he based the $100 on, refers to X-ray and hospital bills, cab fare and "one or two other small items," and, "Consequently, this does not predicate so much of a settlement regardless of whether you are figuring whether your man is wrong or whether you are simply figuring on a bunch of other factors and attempting to buy your peace. These factors definitely entered into my thinking on this particular occasion. The rest of it was for the inconvenience she may have suffered, and, of course, to obtain a settlement of this case."

In the course of a rather extended answer on cross-examination he stated, "we felt under the circumstances the settlement was fair", and he was sure the Barnards did too, "there was no reason for them not to under the circumstances.". On redirect the adjuster was asked whether he would consider such a settlement fair if he had known at the time plaintiff had a

stretched or crushed greater occipital nerve on each side of her head and if he had known plaintiff would have to have major surgery. His answers were, "Probably not." Both defendants contend it was error to allow these answers on redirect. They urge it called for an opinion and conclusion and is irrelevant. The questions and answers were a direct response to the adjuster's testimony on cross-examination that the settlement he did make was fair. This merely showed under the circumstances contended for by plaintiff the adjuster would not have considered the settlement fair. Both are to the state of his mind. Such is proper. Brown v. Guiter, 256 Iowa 671, 677, 128 N.W.2d 896, 900. This is also true of plaintiff's testimony as to what she knew and what she would have done if she knew the extent of her injuries.

The jury could properly make the same finding as is pointed out in Reed v. Harvey, 253 Iowa 10, 19, 20, 110 N.W.2d 442, 447, that the release was signed when both plaintiff and the adjuster were under the mistaken belief plaintiff was not seriously injured, that her headaches were due to the blow on the side of her head, when in truth she then had an injury to the occipital nerves on both sides of her head which required a serious and costly operation resulting in permanent disability. Plaintiff's doctor had in effect told both of them no further medical treatment was necessary and had released her.

The nominal amount plaintiff received for the release was wholly inadequate compensation for the injury to the occipital nerves and indicates it was not within the contemplation of the parties—it merely covered out-of-pocket expenses of $71.30 and $28.70 for inconvenience plaintiff may have suffered; plaintiff would not have accepted, nor would the adjuster—acting in good faith—have offered such a trifling sum had they known she then had a permanent injury to the occipital nerves.

The jury could also properly find plaintiff and the adjuster did not deal in relation to or discuss the question of liability. We find no evidence liability was mentioned between them. As above indicated, the adjuster uses the terms "whether your man is wrong" and "attempting to buy your peace" in reference to his thinking but not in reference to his dealings with

plaintiff. That he dealt with plaintiff on the basis his man was liable is a proper inference. Further, from the testimony of each of them, the jury could properly find they dealt on the basis of plaintiff's out-of-pocket expense which was recalled by plaintiff at $71.30, and the balance "for the inconvenience she may have suffered," and "It was $100 to cover all expenses, whatever I had had."

The principal argument of both appellants is this case does not come within the framework of Reed v. Harvey, 253 Iowa 10, 110 N.W.2d 442, or Jordan v. Brady Transfer & Storage Co., 226 Iowa 137, 284 N.W. 73, but is controlled by Wieland v. Cedar Rapids and Iowa City Railway Co., 242 Iowa 583, 46 N.W.2d 916. The Wieland case does not state a different rule of law from either Reed or Jordan. In Wieland at page 586 of 242 Iowa, pages 917, 918 of 46 N.W.2d, this court said:

"We have to determine whether there is here evidence of mutual mistake sufficient to support a verdict setting aside the settlement of March 13, 1947. We find no such evidence in the record."

An examination of the evidence in Wieland, set out on pages 584 to 586 of 242 Iowa, pages 916, 917 of 46 N.W.2d, shows the plaintiff was examined by two doctors arranged by defendant's attorney. Before she was examined by the second doctor she and her husband voluntarily called on defendant's attorney and advised him she would settle for $200. The attorney stated he did not think she was injured to that extent and the second examination was then arranged. Two weeks later plaintiff and her husband again voluntarily came to defendant's attorney and completed the settlement on the basis proposed by her. The opinion further shows the doctor testifying at the trial did not connect her low back trouble with the accident. In the quotation from Pahl v. Tri-City Railway Co., 190 Iowa 1364, 1367, 1368, 181 N.W. 670, 671, at page 587 of 242 Iowa, page 918 of 46 N.W.2d, we find, "* * * It cannot be said that there was any mistake inducing the compromise. * * * Neither can it be argued that the payment was made and the release signed for a certain known injury."

In the Wieland case there was no evidence of a mutual mis-

take, no evidence plaintiff and the defendant's attorney dealt in relation to a supposed condition. A lump sum was paid without any relation to a known condition, expenses incurred, or loss of time. And what is quoted from Pahl supports that situation, it does not purport to cover the situation present in Jordan. The distinction made by the court in Wieland between Jordan and Wieland is not a repudiation of the law stated in Jordan but a distinction on the facts to show why in Jordan there was a jury question and in Wieland there was not. At page 588 of 242 Iowa, page 918 of 46 N.W.2d, in pointing out the distinction, this court said, "On the strength of this assumed situation an agreement not to sue was made for *an amount sufficient to cover loss of wages and expense on that basis.*" "On that basis" refers to the assumed situation that Jordan's arm was healing and there was a good union.

Both defendants urge since there is a difference between the amount of items plaintiff recalled as being specifically used in arriving at the amount of the settlement, the difference must have been intended to cover future contingencies and amounts to a lump sum settlement. The amount of the specific items was $71.30, the excess $28.70. The arguments are apparently based on the idea the Reed and Jordan cases call for payment of specified items of expense and loss of time only. They are not so restrictive. In Jordan the agent of defendant testified, at page 148 of 226 Iowa, page 78 of 284 N.W.:

"We, of course, had the doctor and hospital bills and the whole argument in the adjustment of the case was how much he was entitled to himself. Now here is the way we arrived at our arrangement. He had not been employed regularly. We conceded that he had employment for the next two months, and that for any contingency we would add another month."

In Reed the $16.41 above the doctor bill included $6 for "trouble." At page 21 of 253 Iowa, page 448 of 110 N.W.2d, is this statement, "The jury could find the settlement was made on the assumption the injuries were known and for an amount sufficient only to cover the loss therefrom."

In this case the excess was for "the inconvenience" or whatever expenses plaintiff had had. Even though the adjuster con-

sidered "buying peace", the only fair inference from the use of that term is not that he was "buying peace" to compromise future contingencies. Under the circumstances here an inference, at least as probable, is the $28.70 was included to cover the loss in addition to those specified occasioned by plaintiff's known condition. When such an inference can properly be drawn the issue is still for the jury.

Briefly, the release recites it is given to compromise all claims known and unknown and injury and loss from the occurrence, that the claim is disputed and defendant, releasee, denies liability, the releasor knows the contents, executes the same voluntarily for the express purpose of precluding forever any further or additional claims arising out of said accident. To avoid such a release for a mutual mistake as to the nature and extent of the injuries the burden is on the plaintiff to show a mistake by both parties as to a present existing fact, here that the injury to the occipital nerves was in existence, was unknown to them and they assumed a temporary injury, and that the parties did not in fact deal as recited in the release, but in fact dealt in relation to the assumed situation and payment was made and accepted on the basis of the assumed situation.

II. Defendants Schloemans' complaint about instruction 18 submitting mutual mistake is not well taken. In the trial court said defendants objected to the use of the words, "that they were both wholly and unconsciously ignorant." The suggested revision was, "that they were both mistaken about the nature, character and extent of plaintiff's injuries." This is merely saying the same thing, if anything the instruction given placed a greater burden on plaintiff, and defendants Schloemans requested their requested instruction 4 be given in lieu thereof. The requested instruction did not include mutual mistake but dealt only with the voluntariness of the release, about which there was no question, and the intent of plaintiff to discharge any claim she might have. The instruction given did in fact deal with such intent where it required plaintiff to prove it was not contemplated by the parties that the settlement was for injuries sustained other than for minor medical expense and loss of time for a short period. The instruction given was the same

as the one considered and approved in Reed and Jordan, both supra, and Reddington v. Blue & Raftery, 168 Iowa 34, 43, 44, 149 N.W. 933, 936.

■■ These defendants also complain of the court's failure to submit interrogatories requested by them. They cite only rule 206, Rules of Civil Procedure. The first was, "Do you find the special damages * * * incurred by plaintiff between December 20, 1961, and January 16, 1962, to be equal to or less than the sum of $71.30 ?" calling for a yes or no answer. This question could have been answered either way without affecting the result. The evidence showed only such amount. The second question was, "Do you find that the plaintiff received from the settlement a sum of money more than her medical expense, loss of earnings and damage to personal property?" Again it was obvious plaintiff had and there was no issue on this. The third was, "Do you find that plaintiff had some head pains when she signed the release on January 16, 1962, that had continued or persisted since the injuries of December 20, 1961?" Here again there was no contention plaintiff's headaches had not so continued. And as in the first two questions an answer either way would not have affected the result. Interrogatories should be such that answers to them will be decisive of the case or some claim involved therein. Plumb v. The Minneapolis and St. Louis Railway Co., 249 Iowa 1187, 1196, 91 N.W.2d 380, and citations.

■■ III. Defendants Schloemans urge they were entitled to a judgment on the pleadings. Schloemans moved to amend their answer to plead estoppel, this was granted and the amendment allowed. In reply, in part, plaintiff stated, "* * * it [any representation] was not based upon a genuine mistake or belief." Defendants' argument is this statement in the reply admitted the release was not given under a mistake of fact. However, the trial court did allow the plaintiff to withdraw such reply and substitute another omitting the quoted language. A party is bound by his pleadings and there is no issue on matters admitted in them. However, he may withdraw or supersede such pleadings and as to them he is not bound. They are evidence against him. Grantham v. Potthoff-Rosene Co., 257 Iowa 224, 131 N.W.2d 256, 259; Leo v. Leo, 239 Iowa 873, 876, 877, 32

N.W.2d 777; and McCarty, Iowa Pleading, Volume 1, section 211, page 170.

IV. Defendants' Schloemans' next contention is a little unusual, they objected to plaintiff's physician testifying because "plaintiff waived the medical privilege and then was erroneously permitted to assert it to defendants' prejudice." This comes about this way. Plaintiff had taken the deposition of Dr. W. E. Wallace, the neurosurgeon who performed the surgery on her neck. He described the operation and plaintiff's condition in detail. He mentioned the history plaintiff gave him, this consisted of an appendectomy in 1950 and operations for slipped discs in her lower back in 1959 and 1960. Shortly before trial defendants wished to take the deposition of Doctor Barthel, plaintiff's regular physician, who not only treated her at the time of this injury, December 20, 1961, but who had been her regular physician for years and was her physician at the time of the prior operations. They were performed by another surgeon, not Doctor Wallace. Upon the taking of the deposition plaintiff's counsel directed Doctor Barthel not to answer some 26 questions evidently on the theory they called for a privileged communication. Most of the questions pertained to diagnosis and treatment following the accident of December 20, 1961, the other questions related to prior surgery and hospitalization not related to the December 20, 1961, accident.

At this point defendants cab company and Cupp came into the picture. They, together with the other defendants, moved the court to require answers to the questions and for a continuance of the trial to allow the completion of the deposition. The trial court overruled the motions. This, defendants cab company and Cupp urge as error here. The trial court was right in overruling the motions and requiring defendants to go to trial. This case was started May 24, 1962, and set for trial November 4, 1963. The deposition was taken October 29, 1963. Even though defendants were confronted with an unreasonable refusal to answer regarding the questions pertaining to plaintiff's injury received December 20, 1961, it was the court's duty under the circumstances to expedite the trial. See Price v. H. B. Green Transportation Line, 287 F.2d 363, 366. It was apparent from

the deposition of Doctor Wallace the patient-physician privilege had not been waived as to any information concerning plaintiff's condition prior to December 20, 1961. And it further appeared plaintiff would not be able to prove her case without some or all of the information requested concerning her condition from December 20, 1961.

 ██ This entire matter has come about through an erroneous view by counsel of what constitutes a waiver of the patient-physician privilege. The privilege is waived by plaintiff testifying to the condition and injury. A plaintiff may also waive the privilege by placing witnesses on the stand or taking their depositions and disclosing the condition or injury and treatment. Where the plaintiff places one of two or more consulting physicians on the stand, who have been or are engaged in a unified course of treatment, or takes a deposition of one of them, the privilege is waived as to the condition disclosed as to all other physicians who are such consulting physicians or surgeons for the particular condition disclosed, but not for any other condition which was either not disclosed or as to which the one sought to be examined is or was not such a consulting physician. Brown v. Guiter, 256 Iowa 671, 681, 682, 128 N.W.2d 896, 903; Woods v. Incorporated Town of Lisbon, 150 Iowa 433, 436–439, 130 N.W. 372, 373–375; Baxter v. City of Cedar Rapids, 103 Iowa 599, 72 N.W. 790; Jacobs v. City of Cedar Rapids, 181 Iowa 407, 164 N.W. 891; and Johnson v. Kinney, 232 Iowa 1016, 1023, 7 N.W.2d 188, 144 A. L. R. 997.

Awtry v. United States, 27 F. R. D. 399, a malpractice case under the Federal Tort Claims Act, cited by defendants, goes to information material and necessary to defense and includes prior medical history in view of the issue raised. Whether the federal courts would so hold in case of injuries received in an automobile case is of course not indicated. In Mariner v. Great Lakes Dredge & Dock Co., 202 F. Supp. 430, the federal district court sitting in Ohio allowed the production of hospital and medical records since the date of the accident and of one hospital and medical record of a prior similar disorder as claimed in the action with the proviso as to any record that if the privilege was to be claimed at the trial such need not be produced.

The Awtry case goes further than we do, by a somewhat different route the Mariner case reaches a result similar to our result.

In this case Doctor Wallace was not a consulting physician except for the condition caused by the December 20, 1961, accident. The record is clear he had nothing to do with plaintiff's prior operations. The mere fact plaintiff mentioned them to him and he related them as part of the history does not waive the privilege. See Woods v. Incorporated Town of Lisbon, supra. It further appears plaintiff and Doctor Barthel testified fully concerning her prior operations and the hospital records concerning them were in evidence. The contentions of all the defendants are wholly without merit.

V. As part of their argument relating to the above, defendants Schloemans contend it was error for the court to allow plaintiff's counsel to have the report of Dr. K. Fathie, defendants' medical expert, which he was using to refresh his recollection while testifying and not require the plaintiff to produce for defendants reports of examinations made by plaintiff's physicians. The record shows the doctor was using the report to refresh his recollection, plaintiff's attorney asked for and was given a copy to follow the testimony. This request made while the witness is testifying does not constitute a request for a copy of the doctor's findings and conclusions under rule 133(a), Rules of Civil Procedure. A party cross-examining is entitled to use for such purpose any paper or document the witness uses to refresh his recollection whether it is his findings and conclusions from an examination under rule 132, Rules of Civil Procedure. This right the cross-examining party has always had. Adae & Co. v. Zangs, 41 Iowa 536; McKivitt v. Cone, 30 Iowa 455; and see State v. Billberg, 229 Iowa 1208, 1217, 1218, 296 N.W. 396. It is not changed or limited by rule 133. The purpose of the exchange of reports under rule 133 is for discovery before trial. No error appears.

VI. Schloemans next contend error was committed against them in the application of the Rules of Civil Procedure because plaintiff was allowed to amend her substituted petition and state causes of action against each defendant individ-

ually and a cause of action against them jointly. Actually this was the import of her substituted petition against the two praying for joint and several judgments. See Ruud v. Grimm, 252 Iowa 1266, 1270, 110 N.W.2d 321, 323. They also complain because plaintiff was allowed to file a substituted petition in November of 1962. This is of course discretionary with the trial court. No abuse appears. Kraft v. Bahr, 256 Iowa 822, 833, 834, 128 N.W.2d 261, 267. And complaint is made because the trial court refused to enter an order for a separate trial on the release issue. Johanik v. Des Moines Drug Co., 235 Iowa 679, 17 N.W.2d 385, cited by defendants, indicates separate trials are properly granted when one count is triable in equity and another at law, but does not indicate issues triable at law should be tried separately. Crockett v. Boysen, 26 F. R. D. 148, squarely supports the trial court. In all of the Iowa cases cited in Division I the issues were tried together. No abuse of the discretion vested in the trial court appears.

▇▇▇ VII. Schloemans complain of the trial court's failure to instruct on the defenses of estoppel and mitigation of damages. Both were included in the statement of issues. As to the defense of mitigation of damages no request for an instruction was made nor was there any objection to the failure to give such an instruction in the trial court. Rule 196, Rules of Civil Procedure, provides in part: "* * *, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, * * * specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter or considered on appeal."

There is nothing before us to review. Hahn v. Graham, 256 Iowa 713, 721, 128 N.W.2d 886, 891; Hester v. Meewes, 256 Iowa 633, 636, 126 N.W.2d 308, 310; and Crist v. Iowa State Highway Commission, 255 Iowa 615, 629, 123 N.W.2d 424, 432.

▇▇▇ The situation in regard to the defense of estoppel is somewhat different. Though a request for an instruction was not filed at the close of the arguments and it does not appear the court fixed any prior time, counsel for defendants did call the omission to the court's attention after the argument but before the instructions were read to the jury. The failure to instruct

was called to the court's attention by counsel reading a proposed instruction into the record and giving the court a single handwritten copy. Plaintiff urges it is not timely because rule 196, Rules of Civil Procedure, requires requested instructions to be filed at the close of the evidence or at such prior time as the court may fix. This overlooks the further provision of rule 196 providing for objections to the failure to instruct after argument and before the instructions are read to the jury. The failure to instruct was called to the court's attention at the proper time and the record shows the trial court understood defendants were complaining of a failure to instruct on estoppel. Plaintiff urges there is no evidence to support the giving of such instruction and we agree.

Defendants pleaded plaintiff is estopped because plaintiff and her doctor represented to defendants her condition on January 16, 1962, was not serious, that such was knowingly made with intent defendants rely thereon, that they so relied to their detriment by paying for the release, and plaintiff is now estopped to deny the representation made on January 16.

There is no evidence in this case to sustain an estoppel. Plaintiff at defendant's request gave him a statement regarding her condition and the accident. The adjuster sought and obtained from plaintiff's doctor a medical report on a form furnished by the adjuster. These are not representations or a position taken to induce the adjuster to act, but good faith reports that later proved to be in error. Defendants have not suffered a detriment, if the true facts were known at the time defendants would not have offered such a sum as $100 for the release. Both parties had the same opportunity for knowledge of the facts. The doctor was not acting as plaintiff's agent in furnishing a medical report to the adjuster. Of course both plaintiff and the adjuster relied on the doctor, but there is no evidence the adjuster relied on plaintiff. No authority has been cited by defendants in support of their proposition and we have found none. It is not supported by any general authority. See Axtell v. Harbert, 256 Iowa 867, 871, 872, 129 N.W.2d 637, 639, 640.

VIII. Schloemans contend it was error to submit an instruction permitting recovery for loss of earnings, past and

future, because the evidence of plaintiff's earnings was so general the jury could do nothing but speculate and there was not sufficient evidence to make an intelligible jury issue. The evidence did show plaintiff's present physical condition, that she was unable to do things she could formerly do. Medical evidence showed plaintiff would be limited in future employment. These things tend to prove her capacity to work in the future. There was evidence of the time lost. Plaintiff's income tax returns were in evidence showing her earnings for the years 1959 through 1962. This would show the value of her time. There were other factors in the evidence as plaintiff's care of her invalid husband which would diminish plaintiff's actual time in gainful employment. Where the evidence shows the time lost and the value of the time with reasonable certainty if not to a mathematical certainty the issue is properly for the jury. Shewry v. Heuer, 255 Iowa 147, 157, 158, 121 N.W.2d 529, 535, 536; and Miller v. McCoy Truck Lines, Inc., 243 Iowa 483, 490, 491, 52 N.W.2d 62.

Schloemans' next complaint is the court allowed plaintiff to introduce testimony bearing on plaintiff's service as a wife and mother under section 613.11, Codes of Iowa, 1962 and 1958, when such was not pleaded. This evidence of what she could not do for her husband and son shows her general physical condition and present disability as compared with her former condition. The evidence is admissible for this purpose as well as under section 613.11.

Schloemans' last complaint is the court allowed plaintiff to inquire of Schloemans knowledge of their pleadings and sustained objections to defendants making the same inquiries of plaintiff. The contention is without merit because of the form of the questions asked, the desired answer was apparent from plaintiff's former answer in one instance and in neither of them would the answer have tended to impeach plaintiff for inconsistent statements or taking an inconsistent position. The only possible result would have been to limit plaintiff to the position taken at that time in her pleadings. There was no change in this. Though it would not have been improper to allow her to answer in each instance the failure to do so is not reversible error.

IX. Defendants Cupp and cab company contend in-

struction 15 relating to the duty of a common carrier is in error in that it imposed a duty not recognized, the language used is improper, and it omitted a statement the rule only applies to dangers which reasonably and naturally may be anticipated and a statement such negligence is not presumed but must of course be proven by plaintiff. They urge here the instruction gave undue emphasis to the duty of a common carrier, however, we do not find this was urged in the trial court; there they did urge the instruction unduly emphasized and distorted their defense. We may only consider the grounds and objections urged in the trial court. Rule 196, Rules of Civil Procedure.

The instruction stated the duty of the carrier substantially as stated by this court since Sales v. The Western Stage Co., 4 (Clarke) Iowa 547 (1857). In The Western Stage case complaint was made of the use of the words "utmost" and "slightest" when used in reference to the skill to be employed and responsibility for negligence. We said at page 549 of 4 Iowa:

"The degree of their responsibility, therefore, is not *ordinary* care, which will make them liable for only *ordinary* neglect, but *extraordinary* care, which renders them liable for *slight* neglect."

The duty of a carrier to its passengers is fully included in the following statement from Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 1139, 1140, 49 N.W.2d 501, 504:

"A carrier of passengers for hire must exercise more than ordinary diligence for their protection. Its duty stops just short of insuring their safety. It is bound to protect its passengers as far as human care and foresight will go and is liable for slight negligence."

The foregoing is stated or approved in Kliebenstein v. Iowa Railway and Light Co., 193 Iowa 892, 895, 188 N.W. 129; Murray v. Cedar Rapids City Lines, 242 Iowa 794, 800, 48 N.W.2d 256; Waterloo Savings Bank v. Waterloo, Cedar Falls & Northern Railroad, 244 Iowa 1364, 1368, 60 N.W.2d 572; Fanelli v. Illinois Central Railroad Co., 246 Iowa 661, 664, 69 N.W.2d 13; and Fisher v. Des Moines Transit Co., 253 Iowa 195, 202, 111 N.W.2d 633.

The instruction given is not erroneous because it stated

the duty stops just short of insuring the safety of its passengers. This is used not to increase the duty owed but to limit it and to advise the jury more than ordinary diligence is less than absolute insurance of the passengers' safety.

It was not necessary for a full understanding of the duty to include the amplification requested by these defendants to the effect the rule only applies to the dangers which reasonably and naturally may be anticipated. This is called a limitation of the rule. It must be borne in mind it is a limitation of the rule that the carrier owes "a high degree of care", "more than ordinary care", etc. See 13 C. J. S., Carriers, sections 678a and 678b; Murray v. Cedar Rapids City Lines, 242 Iowa 794, 800, 48 N.W.2d 256, 260; and Fanelli v. Illinois Central Railroad Co., 246 Iowa 661, 665, 69 N.W.2d 13.

When the duty has been stated with the limitation in it, i.e., "to do all that human care, vigilance and foresight can reasonably do to prevent accidents to passengers", it is not necessary to restate a part thereof. As given, the instruction embodied both the limitation and the corresponding high degree of care in foreseeing and guarding against danger. Murray v. Cedar Rapids City Lines, 242 Iowa 794, 800, 48 N.W.2d 256, 260; and Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 1140, 49 N.W.2d 501, 504. To be correct the amplification requested should have included the duty of foreseeing and guarding against danger. In this regard it should be pointed out no request for an instruction was made, what we are considering is taking exception to an omission. It was not error to refuse the request as made.

Likewise there was no error in not including the thought negligence is not presumed but must be proven by plaintiff as this was stated in a previous instruction.

X. Defendants Cupp and cab company urge error in failing to sustain their motion for a mistrial because the passenger in the cab with plaintiff was allowed to testify that she settled with the cab company. One of the contentions of plaintiff is these defendants did not object to the testimony and in effect have never objected to the testimony. The record discloses the following while plaintiff's counsel was examining the passenger.

"Q. Did the cab company make a settlement with you? A. With me? They gave me $17.

"Mr. Riley: Just a minute, Your Honor, this is obviously prejudicial and Mr. Elderkin, who is a veteran lawyer, knows that this is prejudicial and it's designed to prejudice the client or my client on matters that are extremely extraneous; and at this time we make a motion for mistrial.

"The Court: Well, your motion is overruled.

"Mr. Riley: Fine, we just wanted to make a record on it."

Defense counsel cross-examined the witness concerning the settlement. This examination disclosed her doctor bill was $2 and the cab company paid her $17. Then the following occurred.

"Mr. Riley: I ask that the objection I made be interposed as it was made afterwards because the witness answered before I could make my objection; just so the record will reflect that we object to the direct examination. It's incompetent, irrelevant and immaterial and highly prejudicial.

"The Court: Well, but you have cross-examined.

"Mr. Riley: But I am just asking that it be interposed or a motion be made to strike her answer.

"The Court: The objection may precede the answer."

Without more, defense counsel continued to cross-examine the witness. This was again called to the court's attention in the motion for a new trial.

As to the motion for a mistrial, the trial court may have overruled it because no timely objection had been made to the question, Weilbrenner v. Owens, 246 Iowa 580, 586, 68 N.W.2d 293, 296, there was then no indication by counsel the answer was in before he had time to object. To counsel's statement after cross-examining, the court finally stated the objection may precede the answer. However, no ruling was made or requested. Counsel did not pursue his request or suggestion, "or a motion be made to strike her answer," and the motion for a mistrial was not renewed. There is nothing here on which to base error.

XI. The next error assigned by defendants Cupp and cab company is that plaintiff and the other passenger in the cab were allowed to testify to Cupp's manner of driving at times too

758

remote to have any probative value as to his manner of driving at the time of collision.

 Defendants agree the trial court has considerable discretion in admitting and excluding evidence claimed to be remote. Hahn v. Graham, 256 Iowa 713, 718, 128 N.W.2d 886, 889; and Brower v. Quick, 249 Iowa 569, 581, 88 N.W.2d 120.

Here plaintiff testified as to speed some distance from the scene of the accident and before the cab stopped to pick up the passenger a block or two from the accident and both plaintiff and the passenger testified to the manner in which the cab made U-turns in front of the passenger's house.

Here, in addition to the ordinary duty of due care at the scene of the accident, is the question of high degree of care owed passengers by the cab company. It was not improper to admit this evidence as having some bearing on the duty to foresee and guard against danger. This duty is included in the specific negligence alleged of speed, control and lookout. The trial court did not abuse its discretion.

 XII. Defendants Cupp and cab company's next assigned error is that they were denied the right to cross-examine the passenger and plaintiff's doctor. As to the cross-examination of the passenger the objection that the questions were argumentative was sustained. The lady testified she was not contacted by the cab company. She was then asked, "You didn't think that was right, is that correct?" and "Did that make you unhappy that you were not—?" Though these defendants contend the answers to these questions would disclose the witness's bias or to impeach her as to the liability feature of the case we think the sustaining of the objections on the ground urged was not reversible error. Defendants cite Eno v. Adair County Mutual Insurance Assn., 229 Iowa 249, 256–262, 294 N.W. 323; Schulte v. Ideal Food Products Co., 203 Iowa 676, 213 N.W. 431; Glassman v. The Chicago, Rock Island & Pacific Railway, 166 Iowa 254, 147 N.W. 757; and Jones v. Lozier, 195 Iowa 365, 191 N.W. 103. Each of these cases supports the proposition a party has the right to pertinently cross-examine a witness. In each of these cases the cross-examination considered was directed to a mate-

rial issue concerning which the witnesses had testified on direct examination.

As pointed out in Glassman v. The Chicago, Rock Island & Pacific Railway, 166 Iowa 254, 260, 147 N.W. 757, after the right to cross-examine has been substantially and fairly exercised its method and duration are subject to judicial discretion.

The questions directed to plaintiff's doctor inquired as to her husband's physical condition being a cause of her present condition. Defendants did obtain an answer that it was reasonably possible. No error appears.—Affirmed.

GARFIELD, C. J., and HAYS, PETERSON, SNELL and MOORE, JJ., concur.

THOMPSON, LARSON and STUART, JJ., dissent.

THOMPSON, J.—I am unable to agree with Division I of the majority opinion. The true rule which should govern the case is that expressed in Wieland v. Cedar Rapids and Iowa City Railway Co., 242 Iowa 583, 588, 46 N.W.2d 916, 918. There we distinguished Jordan v. Brady Transfer & Storage Co., 226 Iowa 137, 284 N.W. 73. We said: "Here there was a settlement for a lump sum having no relation to any computation based on estimated loss of time and expense. *The parties clearly intended to cover future developments whatever they might be.*" (Italics supplied.)

The Jordan case seems to have been followed by our decision in Reed v. Harvey, 253 Iowa 10, 110 N.W.2d 442. The latter case has apparently extended the doctrine of cancellation of contracts because of mutual mistake still further. There is a considerable volume of authority now, which seems to entirely abrogate the validity of releases, for all practical purposes. If the holding in these cases is to be followed, a release of liability in cases involving personal injuries is now a futile gesture; perhaps worse than futile, from the standpoint of the one who pays for it. The doctrine that the courts favor compromises has no longer any meaning.

The statement is made that the great majority of courts now hold that a release may be set aside for mutual mistake; particu-

larly, a mutual mistake as to the severity of the releasor's injuries. There is some dispute as to whether this is in fact the majority rule; but I think we should look to the reason of the matter instead of attempting to determine how many authorities have held one way, and how many the other. And on reason, I prefer the rule which upholds contracts fairly made between parties dealing at arm's length and who are under no legal disability.

I. The proper rule is that expressed by the Supreme Court of Missouri in Vondera v. Chapman, 352 Mo. 1034, 1039, 180 S.W.2d 704, 705, 706: "It is the policy of the law to encourage freedom of contract and the peaceful settlement of disputes. A person under no disability and under no compulsion may convey his property or relinquish his rights for as small consideration as he may decide. To hold otherwise, while it would relieve the instant appellant of the effects of a bad bargain, would establish a harmful precedent not only as to personal injury claims, but as to contracts in general. Such a policy would make it difficult to settle controversies respecting damages to person or property without resort to the courts."

The Missouri court then quoted, with approval, from Farrington v. Harlem Savings Bank, 280 N. Y. 1, 19 N.E.2d 657: "No doubt the plaintiff had a perfect right to agree to settle for the injuries which were known and for all other injuries which might result, and such agreement would be binding upon him no matter how serious the result of the injuries might thereafter turn out to be, provided the agreement was fairly and knowingly made." Many other authorities are then cited to the same effect.

The Massachusetts Supreme Judicial Court has supported the same rule. In Tewksbury v. Fellsway Laundry, Inc., 319 Mass. 386, 389, 65 N.E.2d 918, 919, is this language: "The great weight of authority supports the view that a release of a claim for personal injuries cannot be avoided merely because the injuries proved more serious than the releasor believed them to be at the time of executing the release, and that, in order to invalidate a release on account of mutual mistake, the mistake must relate to a past or present fact material to the contract *and not*

*to an opinion respecting future conditions as a result of present facts."*

Pass v. McClaren Rubber Co., 198 N. C. 123, 128, 150 S.E. 709, 711, also contains pertinent language: "Plaintiff having chosen to settle his claim before the full extent of his injury had been ascertained, thereby taking the risk that his damages might exceed the sum paid to him in settlement of his claim, must abide his contract."

II. Williston on Contracts, Rev. Ed., section 1551, states this rule: "* * * where a release is given by one injured in an accident and more serious injuries develop than were supposed to exist at the time of the settlement, it is a question of fact whether the parties assumed as a basis of the release the known injuries, *or whether the intent was to make a compromise for whatever injuries from the accident might exist whether known or not."* (Italics supplied.)

The intent to compromise the claim for injuries "which might exist whether known or not" could not be more clearly expressed than in the instant case. The release covers "all injuries, known or unknown which have resulted or may in the future develop." While there has been some attempt to derogate attempts to cover future possible injuries by such language in releases, I am unable to see why the parties may not contract as they did here. The release plainly says "we will pay you this money; in return you release all causes of action against us; and this release covers any injuries of which you are now aware, and any others of which you do not have knowledge." It was a plain notice to the releasor that she was releasing any claims for injuries of which she might not then have knowledge. If she did not wish to release such possible claims, she was under no compulsion to execute the release. Since she did execute it, and since there is no claim of fraud, misrepresentation or unfair dealing, and the plaintiff was in no way under legal disability, I see no valid reason for abrogating the contract she made.

III. In fact, there was here no mutual mistake. The question is not whether the parties intended to settle only for the injuries then known; the contract goes too far to permit that argument to be fairly made, or sustained. The real question is,

did the contract as made cover all injuries "known or unknown which have resulted or may in the future develop"? The language of the release is definite that it did. The plaintiff must have known, since she does not claim she did not know, the contents of the contract and indeed could not be heard to so claim, under the record here, that she was releasing her claims, even though they were then unknown to her. How, then, can the question of mutual mistake be urged? The plaintiff got exactly what she bargained for, and the purchaser of the release should be entitled to the same right.

IV. In this connection, the majority puts considerable stress on the examination of the adjuster who made the settlement. This has no bearing on the real question set out above. It is immaterial that, if he had known of the severity of plaintiff's injuries, he would not have thought the amount adequate. Assume that neither knew what might later develop. But freedom from liability for claims of "unknown injuries" was exactly what the payer was bargaining for. There is no law that says a competent adult, who is not victimized by fraud or misrepresentation, is entitled to be relieved of the consequences of his bargain if it later proves to have been a disadvantageous one.

While I do not see its materiality or relevancy, I am also unable to agree that it is a proper inference the adjuster "dealt with plaintiff on the basis his man was liable." The release speaks for itself and negatives that point, and as the majority states "We find no evidence liability was mentioned between them."

I would hold the release binding, and that a verdict should have been directed for each defendant.

LARSON and STUART, JJ., join in this dissent.