Jack Thomas, appellee, v. William M. Sheehan et al.,
appellants.

No. 52399.

(Reported in 149 N.W.2d 842)

April 4, 1967.

Bradshaw, Fowler, Proctor & Fairgrave, by Michael Figenshaw, of Des Moines, for appellant William M. Sheehan.

Gill & Huscher, of Des Moines, for appellee.

SNELL, J.—This is an action for personal injuries.

The question here is the sufficiency of the evidence to generate a jury question as to a mutual mistake of fact incident to the execution of a release. On the issue before us there is no material controversy in the testimony. There is controversy as to the conclusions to be drawn therefrom.

Plaintiff while operating his automobile was "rear-ended." He seeks recovery from defendant Sheehan for his resulting injury and damage. John W. Hatfield, originally named as a defendant, is out of the case following a directed verdict.

At the time of the accident injuries and damage appeared minimal. There was no apparent damage to plaintiff's car, but repair bills totaling $73 within the next few weeks were attributed by plaintiff to the collision.

Plaintiff's body was thrown into the steering wheel and his knees against the dashboard. The next morning he was stiff and sore. He had an abrasion on his arm, a headache and a pain in his neck. He was examined by his doctor. His condition was diagnosed as a myofascial strain of the neck and lower back. Plaintiff did not complain about his knees or legs and the doctor did not examine them. Plaintiff testified that he was not aware of any injuries to his knees. Plaintiff's expense for doctor bill, X ray and drugs was about $50.

A little more than three weeks after the accident plaintiff was contacted by defendant's insurance company representative. A few days later (29 days after the accident) they met and discussed plaintiff's claim. Plaintiff presented his medical bills and car repair bills. Plaintiff said his soreness was gone. There was some discussion as to an allowance for plaintiff's suffering. There was no mention of injury to plaintiff's knees and nothing in the record to indicate that either party had any knowledge of any serious injury to plaintiff.

Plaintiff told the representative that he felt his case should be worth $1500 thinking "it didn't hurt to ask." The representative told plaintiff he was kidding. He said "that for suffering they would give two or three or four or five times the amount of the doctor bill for suffering." Plaintiff accepted $150 and signed and delivered a release. The release provided that plaintiff released and forever discharged defendant from any and all actions, causes of actions, liability, claims and demands upon or by reason of any damage, loss, injury or suffering, known or unknown, accrued, or unaccrued, which have been or may hereinafter be sustained by the plaintiff in consequence of the accident which occurred on or about March 14, 1963.

Three or four months after the accident plaintiff developed trouble in his left knee. Examination by an orthopedic surgeon indicated an osteochondritis, free body in the left knee. Hospitalization, surgery and a period of disability followed.

There was sufficient evidence to connect plaintiff's knee injury to his car accident.

Plaintiff brought this action to recover for his injuries and damage.

Defendant denied the material allegations of plaintiff's petition and by way of further defense alleged that plaintiff was barred from recovery by reason of the previous release and settlement agreement.

Plaintiff admitted signing the release, but denied being barred from recovery for the reason that at the time of the signing the parties were mutually mistaken about the nature and extent of the injury.

The case was tried to a jury. Timely and complete motions to direct were made by defendant and were overruled.

The issues were submitted with a verdict in the sum of $2735.35 for plaintiff.

Defendant (we assume he is speaking for his insurance carrier) being understandably unhappy about the ineffectiveness of the release obtained by the insurance company has appealed. Otherwise, the result is not seriously challenged.

The release is about as complete in its wording as possible.

There is no claim of any fraud, concealment, coercion or undue haste in its procurement. The only question is whether as a matter of law such a release given for a comparatively nominal sum will bar a subsequent action for injuries unknown at the time.

I. Our comparatively recent review and pronouncements incident to avoidance of a release because of mutual mistake make exhaustive discussion of many prior authorities unnecessary. Our most recent pronouncements appear in Reed v. Harvey, 253 Iowa 10, 110 N.W.2d 442 (1961), and Barnard v. Cedar Rapids City Cab Co., 257 Iowa 734, 133 N.W.2d 884 (1965). The citations and discussions therein need not be repeated here. In Barnard v. Cedar Rapids City Cab Co., loc. cit. 741, we said:

"Our cases have long held a contract may be set aside for a mutual mistake of a material fact and a release is no different from any other contract. In the following cases we have held or recognized a release for personal injuries may be set aside where the release was given and taken under a mutual mistake as to the nature and extent of the releasor's injuries." (Citations)

Defendant-appellant does not seriously challenge this principle of law but argues that the factual situation here takes the case out of the Reed and Barnard rule.

In Reed plaintiff was bitten by defendants' dog. The dog tore her clothes and caused bleeding. She was treated by a doctor. After her wounds were treated on four different days she was released. Prior to the time the doctor told her she need not return for treatment, an adjuster of defendants' insurance company contacted plaintiff and told her to call him when the doctor released her. She did as directed. Thereafter, the adjuster came to plaintiff's home. He asked plaintiff where the dog bit her and if the doctor had released her, to which she gave an affirmative answer. He thereafter called the doctor to verify the fact plaintiff was released and at that time found out that the doctor's bill was $19. The adjuster told plaintiff he would allow $10 for her torn clothes and in all $16.41 "for loss of

your clothes and the trouble you went through and transportation." He also agreed to pay the doctor's bill of $19. The adjuster then gave plaintiff a release and told her to wait a few days prior to sending it to him to make sure the dog did not have rabies. Plaintiff did wait and then signed the release and returned it to the adjuster.

About six months later she underwent surgery on her knee for complications resulting from the dog bite. She brought action against defendants and the release she had signed was offered as an absolute defense. Plaintiff sought to avoid the effect of the release on the ground it was a result of mutual mistake by plaintiff and the adjuster concerning plaintiff's physical condition at the time the release was executed. The evidence indicated that neither knew the serious nature of plaintiff's injuries or that she would have to undergo surgery. The issue was submitted to the jury which found in plaintiff's favor thereon.

In considering the release signed by plaintiff the authorities were extensively reviewed. Quoting from 71 A. L. R.2d, page 88, we said:

"There 'appears to be a definite trend in most jurisdictions towards granting relief liberally where it is made to appear that an injured party released his claim under a false impression that he was fully informed as to the nature and extent of his injuries.' "

On pages 19 and 20 of 253 Iowa we said:

"Unless we are to repudiate our carefully considered decision in Jordan v. Brady Transfer & Storage Co., supra, 226 Iowa 137, 284 N.W. 73, and go counter to the definite trend of current authority, we must hold it was proper to submit to the jury the question whether the release was the result of mutual mistake.

"The jury could properly find this release was signed under the mistaken belief of both plaintiff and the adjuster that plaintiff's knee was not seriously injured when, in truth, she then had a torn meniscus which necessitated a serious and costly operation; plaintiff's doctor had told both of them in effect that no further medical treatment was needed and he had released her;

the nominal amount plaintiff received for the release was wholly inadequate compensation for the knee injury and indicates it was not within the contemplation of the parties * * *." .  ·

In the case at bar the trial court's definition of "mistake" appearing in instruction 12 is carefully worded in language approved in the Jordan case.

In Barnard plaintiff was injured while a passenger in defendant's cab. At the time her injuries appeared slight. She was examined by a doctor, X rayed, given a sedative and headache pills and sent home. She was assured by her doctor that the X ray was negative.

Plaintiff and defendant's adjuster discussed plaintiff's expense for hospital and doctor bills, her lost time, her apparent injuries, and her torn overshoes and hose. These items totaled $71.30. Plaintiff accepted $100 in settlement and signed a release.

About four weeks later it developed that she had a "whiplash" injury to the occipital nerves on both sides of her head. Surgery, hospitalization and expense followed and plaintiff sued defendant. The release signed by plaintiff was pleaded in bar and plaintiff pleaded mutual mistake. The issue of mutual mistake of fact as to the nature and extent of plaintiff's injuries was submitted to the jury. A verdict in a substantial amount was returned and we affirmed citing many cases including Reed v. Harvey. On page 744 of 257 Iowa, we said:

"The jury could properly make the same finding as is pointed out in Reed v. Harvey, 253 Iowa 10, 19, 20, 110 N.W.2d 442, 447, that the release was signed when both plaintiff and the adjuster were under the mistaken belief plaintiff was not seriously injured, that her headaches were due to the blow on the side of her head, when in truth she then had an injury to the occipital nerves on both sides of her head which required a serious and costly operation resulting in permanent disability. Plaintiff's doctor had in effect told both of them no further medical treatment was necessary and had released her.

"The nominal amount plaintiff received for the release was wholly inadequate compensation for the injury to the occipital

nerves and indicates it was not within the contemplation of the parties—it merely covered out-of-pocket expenses of $71.30 and $28.70 for inconvenience plaintiff may have suffered; plaintiff would not have accepted, nor would the adjuster—acting in good faith—have offered such a trifling sum had they known she then had a permanent injury to the occipital nerves."

The factual background and the problems involved in the case at bar are clearly comparable to those in the Reed and Barnard cases.

II. Defendant argues that in Reed and Barnard the settlements were for specific items while in the case at bar there was an at arm's-length negotiation and package deal settlement.

We cannot agree that there is such a significant difference as to make the cases distinguishable. In the Reed case defendant paid plaintiff's doctor bill plus an allowance of $10 for torn clothes and $6.41 for trouble and transportation.

In the Barnard case the difference between the specific items of expense and the settlement figure was $28.70.

In the case at bar the difference is about $27. There is nothing in the record to definitely designate what this was for except the indication that the adjuster allowed something for plaintiff's suffering.

A similar argument was made, considered and rejected in the Barnard case. It was there argued that the difference must have been intended to cover future contingencies and amounted to a lump sum settlement. We held that even though such an inference might be drawn the issue was still for the jury (loc. cit. 746, 747).

III. We are not unaware of the dilemma in which claims adjusters find themselves in trying to settle as against unknown injuries and future developments. We are also fully aware of the vigorous dissent in the Barnard case. The argument in that dissent is appealing but we are not convinced that the alleviation of a harsh rule is necessarily bad. The development of the law permitting correction of mistakes has been in the interest of justice. The doctrine that courts favor compromises still has meaning but when it appears that a mistake has

been made it is proper to take a look at the factual situation as it existed when the words were written.

In the case at bar there was uncontradicted testimony that the settlement for a comparatively small amount was made in complete ignorance of plaintiff's actual injury. Mutual mistake was alleged and the question was submitted to the jury. Repeating again from Reed v. Harvey, Division I, supra, unless we are to repudiate our previous pronouncements and the definite trend of current authority we must hold that this case was properly submitted to the jury.

We find no error.

The case is—Affirmed.

GARFIELD, C. J., and LARSON, RAWLINGS and BECKER, JJ., concur.

MASON, MOORE and STUART, JJ., concur specially.

MASON, J. (concurring specially)—As I am unable to distinguish this case from Reed v. Harvey, 253 Iowa 10, 110 N.W. 2d 442, and Barnard v. Cedar Rapids City Cab Co., 257 Iowa 734, 133 N.W.2d 884, both cited by the majority, I concur on the basis of stare decisis.

MOORE and STUART, JJ., join in this special concurrence.