**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 31 1997**

**PATRICK FISHER**
**Clerk**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

STEVEN E. FORD, C. LYNN FORD,
MICHAEL G. FORD, a minor, and
BEATRICE MEIERSTEIN,

     Plaintiffs-Appellees,

v.

ALLIED MUTUAL INSURANCE
COMPANY, an Iowa corporation,

     Defendant-Appellant.

No. 96-8096
(D.C. No. 93-CV-201)
(D. Wyo.)

## ORDER AND JUDGMENT[*]

Before **SEYMOUR**, Chief Judge, **PORFILIO** and **TACHA,** Circuit Judges.

The issue in this case is the effect of an underinsured motorist insurance

carrier's approval of a settlement between its insured and the tortfeasor, where

additional primary insurance for the tortfeasor is subsequently discovered. We

have described the facts of this case in our earlier published opinion. Ford v.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Allied Mutual Ins. Co., 72 F.3d 836 (10th Cir. 1996). In 1989, Steven Ford and his family sustained serious injuries when their car was struck by the trailer of a truck negligently driven by Leland Blatter. The Fords' total damages were later determined to be $670,000. Mr. Blatter and his liability insurer, Truck Insurance Exchange (TIE), a.k.a. Farmers' Insurance Group, offered the policy limits of $300,000 in exchange for a release from all liability. The Fords carried underinsured motorist (UIM) coverage with Allied Mutual Insurance Company (Allied). Mr. Ford revised a form release provide by TIE, and sent a copy of the release to Allied requesting that it approve the settlement and release of Mr. Blatter. On August 16, 1990, Allied wrote to Mr. Ford, stating "Allied Mutual Insurance Company has obtained an assets check on Mr. Blatter and have determined that there [are] no funds from which to collect any subrogation claim against him. Therefore, you have Allied's permission to enter into a release with Mr. Blatter and Farmer's Insurance for your [family's] claim[s]." Aplt.'s app., vol. II at 81.

The trailer to Mr. Blatter's rig was owned by Rollins Leasing Company, which leased the trailer to Darigold, which in turn leased the trailer to Mr. Blatter. The Fords released Mr. Blatter, reserving their right to "pursue claims against any and all *other parties responsible for [their] injuries*, including, but not limited to, Rollins Leasing." Aplt.'s app., vol. II at 38, 41, 44 (emphasis

-2-

added).  However, the release did not reserve the right to recover from additional sources of liability insurance available to Mr. Blatter.  Subsequent to the execution of the release, Mr. Ford and Allied discovered that Darigold had a $1,000,000 policy for which Mr. Blatter was an insured.  In a trial to the jury, the jury found that Allied had waived its rights to and was estopped from asserting the Darigold policy as a defense to Allied's UIM coverage.

Allied appeals, asserting that waiver and estoppel do not apply under Iowa law, and if they do apply, the elements are not satisfied as a matter of law; that the district court erred in refusing to instruct the jury that the Fords were in an "arms length relationship" with Allied; and that the district court erred in refusing to allow testimony regarding mutual mistake in the release.

The parties agree Iowa law applies.  Allied argues, quite simply, that the UIM coverage does not apply because Mr. Blatter, as it turned out, was not an underinsured motorist.  As a general rule, under Iowa law the UIM carrier may require the insured to pursue the tortfeasor's available primary policy limits and assets before liability for UIM coverage attaches.  An insured may not unilaterally sign away the UIM insurer's subrogation rights with respect to the tortfeasor's assets or other applicable insurance policies.  Grinnell Mutual Reins. Co. v. Recker, 561 N.W.2d 63, 68-69 (Iowa 1997).  Thus, if an insured settles with a tortfeasor for less than available policy limits *without the consent of the UIM*

-3-

*carrier*, the UIM carrier will be credited for the amount of the policy limits, rather than the amount of the settlement.   Rucker v. National General Ins. Co., 442 N.W.2d 113, 117 (Iowa 1989) (en banc).  However, Rucker does not resolve the issue before us: whether the UIM insurer, by its explicit written consent to the settlement entered into by its insured, may waive its right to subrogate against any additional assets of the tortfeasor and thereby waive its right to be credited for the full policy limits of additional, unknown primary coverage.

Under the UIM policy, the Fords could not settle any claims without the consent of Allied.  The necessary converse is that the Fords must be able to rely on such consent once procured in good faith.  Rucker itself, upon which Allied relies so heavily, discusses the policy considerations which "favor allowing injured parties the flexibility of entering into a settlement with the tortfeasor's liability carrier for less than the full amount of coverage."  442 N.W.2d at 115-16. The same policy considerations counsel that a UIM carrier, when it approves such a settlement, ought to be bound by the terms of its approval.

Allied contends that waiver does not apply in the instant case because

> "the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrine in this respect is therefore to be distinguished from the waiver of, or estoppel to assert, grounds of forfeiture."

Randolph v. Fireman's Fund Ins. Co., 124 N.W.2d 528, 531-32 (Iowa 1963)

(quoting 29A AM. JUR., *Insurance*, § 1135, at 289). We note that this case, and the others relied upon by Allied, address only the limits of *implied* waiver by the insurer's conduct, not the type of express waiver by Allied's written approval of the release present in this case. Moreover, under Iowa law it is clear that an insurer may waive many of its defenses to coverage. Scheetz v. IMT Ins. Co. (Mut.), 324 N.W.2d 302, 304-05 (Iowa 1982) (en banc). An insured may show that the insurer waived the requirements of policy provisions which are conditions precedent to coverage. Simpson v. United States Fidelity & Guar. Co., 562 N.W.2d 627, 631 (Iowa 1997). Allied has pointed to no caselaw indicating that Allied may not *expressly* waive either its right to require its insured to exhaust the tortfeasor's liability limits, or its right to subrogate against the tortfeasor's assets.

In order to establish waiver, the evidence must show that Allied had a right under the policy, that it had actual or constructive knowledge of the right, and that it intended to relinquish that right. Scheetz, 324 N.W.2d at 304. Because it is uncontroverted that Allied did not know about the Darigold insurance policy when it approved the release of Mr. Blatter, Allied claims it could not have intended to relinquish its right to that primary coverage. We are not persuaded. Allied's right under the policy was the right to require its insured to exhaust all assets of the tortfeasor, both known and unknown, or in the alternative, to subrogate against all assets of the tortfeasor, both known and unknown. At the

time the injury was incurred, Allied possessed a "contingent subrogation right." See Grinnell Mutual Reins., 561 N.W.2d at 69. Allied's right under the policy was to set off from the insured's damages all applicable insurance coverage and non-exempt assets which might be identified. Allied has pointed to no authority suggesting that its ability to waive this right depends on its knowledge of the exact source and dollar amount of the tortfeasor's assets. The issue of waiver was properly submitted to the jury.

Because the jury was properly instructed on waiver, it was also proper for the district court to instruct the jury on the elements of estoppel. "The term estoppel is broader than that of waiver, and may embrace it within its scope, in certain instances, since an insurer, after waiving certain rights, would be estopped thereafter to insist upon them." 16B JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW & PRACTICE § 9081, at 497 (rev. 1981). Evidence in the record shows that the Fords changed their position in reliance on the waiver given by Allied: they signed the release of Mr. Blatter. Allied must have intended that the Fords so rely, because the Fords were prohibited by their policy from settling without Allied's consent. Allied's arguments on estoppel are misconceived: it argues that because the Fords and Allied were in an "arms length" relationship, the Fords could not rely on Allied's representations about the availability of additional insurance coverage on Mr. Blatter. The facts underpinning Allied's

decision to waive its subrogation rights by consenting to the release are simply irrelevant to the question of whether the Fords may rely on the waiver itself. The Fords have no duty to investigate the factual bases of Allied's waiver, "arms length" relationship or no.

Finally, Allied contends that the district judge erred in refusing to allow evidence of mutual mistake regarding the release executed by the Fords and Mr. Blatter. Allied claims that if the release may be voided or reformed due to mutual mistake, Allied should not be liable because other insurance is available to Mr. Blatter. As an initial matter, it is questionable whether ignorance of the Darigold policy is the type of mistake about the existence, nature, or value of the objects of the contract, to which the doctrine of mutual mistake applies. See 3 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 605 (1960). Allied does not contend that Mr. Blatter and the Fords misunderstood the extent of the Fords' injuries, cf. Thomas v. Sheehan, 149 N.W.2d 842 (Iowa 1967) (mutual mistake as to nature and extent of injuries for which release of liability was given is question for the jury), or the scope of the release given to Mr. Blatter. All parties were aware that Allied was giving up its contingent subrogation rights. Under the circumstances of this case, mutual mistake with respect to the release is simply irrelevant to a determination of the scope of the waiver given by Allied. If Allied's approval of the release given to Mr. Blatter constitutes a waiver, as the jury found, then

Allied is estopped from asserting against the Fords any defense based on defects in that release. Although mutual mistake in the release may provide a basis upon which Allied could contest the validity of the release with Mr. Blatter, Allied's approval of the release waives any right to contest the release with its own insured.

In sum, we find Allied's arguments unpersuasive and somewhat disingenuous. Under its policy, Allied had the right to withhold consent from the proposed release, to condition its consent on a reformulated release, to insist that its insured file a lawsuit to discover the relevant insurance information, or to pay its insured and file the lawsuit itself pursuant to its subrogation rights. Instead, Allied approved the release which preserved its rights only with respect to other tortfeasors, but not its rights with respect to then-unknown assets available to the released tortfeasor, Mr. Blatter. It now seeks to impose all risk of its error on its insured, without even a hint that the insured has done other than fully cooperate with the demands made by Allied in the handling of the claim.

We **AFFIRM**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Chief Judge